THE TRACY LAND COMPANY ET AL., Appellees, v. POLK COUNTY LAND AND LOAN 'COMPANY, M. E. WHITE, ET AL., Appellants.

**Brokers:** ACTION FOR COMMISSION : GENERAL DENIAL : ADMISSION OF
1 EVIDENCE. In an action on a contract to pay commissions for procuring a purchaser for land, the defendant, under a general denial, is not confined to evidence simply in denial of the contract as alleged in the petition, but may prove the contract in fact made and plaintiff's nonperformance.

**Same:** ESTOPPEL: EVIDENCE. A letter written by defendants in an
2 action to recover commissions for finding a purchaser of land, in which they stated that they had not received all of the earnest money due under the contract of sale but that a portion was held in escrow pending litigation over the right to the same, and stating that when received they would pay plaintiff's commission, did not conclusively estop defendants from claiming, as a defense, that they were not liable for the commission until the contract of sale was fully completed.
On a review of the whole evidence it is held, that the question of whether. defendants were to pay the commission when the contract of sale was signed, or upon completion of the sale, was one of fact and a directed verdict for plaintiff should not have been entered.

*Appeal from Boone District Court.*— HON. J. R. WHIT-
AKER, Judge.

TUESDAY, JUNE 12, 1906.

ACTION at law to recover a commission for the sale of
real estate. From a directed verdict for plaintiffs, defend-
ants appeal.— *Reversed.*

*Stevens & Fry,* for appellants.

*Goodykoontz & MaHoney* and *J. A. Tracy,* for appel-
lees.

DEEMER, J.— Plaintiffs allege that defendants orally
promised and agreed to pay them a commission of $112.50,
provided they would aid in procuring and inducing Thomp-
son and Torkelson to purchase certain land in
Minnesota. That they did as agreed, and that
Thompson and Torkelson entered into a bind-
ing and enforceable contract for the purchase of the land,
and that thereafter defendants promised and agreed to pay
plaintiffs the sum of $112.50 for their services. That their
efforts were by defendants treated as a full compliance with
their agreement to aid in securing purchasers for the land,
and defendants promised to pay the agreed commission there-
for. Defendants denied each and every allegation of the
petition, and, on the issue thus tendered, the case was tried,
resulting in a directed verdict as above stated. Plaintiffs
introduced testimony in support of the allegations of their
petition, and defendants denied the contract as pleaded in
the petition. They also introduced testimony to the effect
that the agreement was to pay plaintiffs the commission
named when the sale of the land to Thompson and Torkelson
was completed and the final payment made. They also
offered to show that the sale contract was never completed
and that the purchasers instead of completing it had brought

1. BROKERS:
action for com-
mission: gen-
eral denial:
admission of
evidence.

suit against the sellers, to recover payments made, in which one of the plaintiffs, Tracy, appeared as an attorney for the purchasers, which suit had not been determined, but was still pending for trial.  Part of this testimony was rejected, and, as we think, erroneously.  Although defendants filed nothing but a general denial of the allegations of the petition, they had the right not only to offer testimony in denial of the contract as claimed by plaintiffs, but also to prove the contract which they in fact made and nonperformance thereof on plaintiffs' part.  *Bucy v. Pitts Co.,* 89 Iowa, 464; *Johnson v. Pennell,* 67 Iowa, 669.  This being the law, the trial court was in error in its rulings on the admission of testimony, and the case should be reversed, unless upon the whole case no verdict could have been rendered for defendants.  This presents the decisive question in the case.

The trial court, in its oral opinion delivered in ruling on the motion to direct a verdict, thought that a certain letter written by defendant, White, was conclusive of this ques-

2. SAME: estoppel: evidence. tion, and that there was no case to go to a jury. In fairness it should also be said that the trial court was of opinion that under the undisputed testimony plaintiffs were entitled to a verdict.  It is agreed on all hands that defendants did not have title to the land; they simply had an option upon and were speculating with it. Plaintiffs claim, that defendants represented, that if they sold the land for $28 per acre they would make $225, and that if they (plaintiffs) could get the parties named to purchase the land they (defendants) would give them (plaintiffs) one-half of the profit, to wit, $112.50.  Plaintiffs showed the land to Thompson and Torkelson and they entered into a contract for the purchase thereof paying the sum of $836 by check, and agreeing to pay the balance of $3,000 on November 1, 1902, at which time a deed was to be made.  This contract was made June 21, 1902, and provided that if the purchasers should fail to take and pay for the land the $836 should be forfeited to the sellers.  It also

contained this provision (which to say the least, is somewhat peculiar): " This contract is subject to ratification of the owner of said land and in case the sale according to the terms thereof is not approved, the earnest money above mentioned shall be returned to the parties of the second part, this contract to be terminated subject to all the conditions hereinbefore stated on the 1st day of November, 1902."

Plaintiffs claim that after this contract was made and signed and after the payment of the $836 defendants promised and agreed to pay the commission, that they requested it several times, but defendants always said they had not got the check cashed yet, and as soon as they got it cashed and got their money they would pay. It seems that on the 18th of July, 1904, plaintiffs wrote defendants some kind of a letter, to which defendants made the following response:

Mr. J. A. Tracy, Sioux Rapids, Iowa — Dear Sir: Answering yours of the 18th, inst., I am not going to endeavor to strain my mental capacities in quarreling with you by letter. We will aim to take care of our interest when the proper time comes. I do not think you are familiar with all of the details. We have never had but $336 all earnest money, the other $500 remains in escrow in the bank, until it is determined that we are the owners of this amount we cannot afford to pay you the $112.50, the amount of the commission that was agreed upon when you were here. I think it has been over one year since the Torkelson and Thompson contract has been legally cancelled, and do not think they have any case that need to annoy us very much. As soon as we get the $836 as you claim we have had, we will pay you the $112.50. Yours truly, Polk County Land and Loan Company. M. E. White. Dict. M. E. W.

The sale was never completed, and it seems that the purchasers brought suit to rescind the sale and to recover the amount paid by them sometime before the writing of the letter in question, which suit was undecided when this action was tried.

The grounds of that action do not appear. This was

plaintiff's case. One of the defendants, White, was a wit-
ness in his own behalf and he denied the contract as testified
to by a witness for plaintiff, saying explicitly that he never
promised to pay the commission as soon as the parties signed
the contract, and that he did not agree to pay the commission
when he got the check cashed. He testified explicitly that
he agreed to pay the commission when the deal was com-
pleted and the final payment made. He further testified
that the purchasers never paid the final amount called for
by the contract; that on the contrary they had repudiated it
and brought suit for the return of what they did pay. De-
fendants offered to show by this witness that the $836 was
in escrow pending the result of the suit to recover it back
but they were not permitted to do so. After notice of the
proposed sale, defendants entered into a contract for the
purchase of the land from the owner to comply with their
part of the contract of sale to Thompson and Torkelson. It
also appears from the cross-examination of this witness that
$500 of the first payment on the land was deposited in a
bank, and remained there in escrow according to an arrange-
ment with the purchasers, and that the sale to Thompson
and Torkelson had not been completed, but repudiated by
them. It further appears that they have not paid the true
owner for the land. Witness White admitted writing the
letter above set out, and said that he had not received the
full $836; that his right to it was still in litigation. Upon
this testimony the verdict for plaintiffs was directed. There
was a square conflict between plaintiffs and defendants as
to terms of the commission contract, and the case should
have been submitted to the jury for a decision as to which
was right unless it be for the letter which we have quoted.
As an admission or declaration against interest, that letter
was properly before the jury for what it was worth; but in
itself it did not constitute a contract and is not sued upon as
such. As such admission or declaration it was not conclu-
sive, unless for a reason subsequently to be stated, but was

properly in the case not only as an admission but for impeaching purposes as well. It was not conclusive unless it be for a rule which obtains in such cases denying to a party to litigation, a right to change his ground or mend his hold after litigation is begun.

This is a rule of estoppel (*Donley v. Porter*, 119 Iowa, 542), and generally an estoppel must be pleaded. It was not pleaded in any form in this case. Aside from this, however, even if defendants are precluded from asserting any other reason for failure to pay a commission, this does not relieve plaintiffs from proving up their case. Defendants denied the contract pleaded by plaintiffs, and it may be they are estopped from interposing any other affirmative defense than that stated in their letter. But plaintiffs cannot recover on the letter alone; for they do not plead it as constituting a cause for action. However, should we look to the letter, it does not amount to an admission that plaintiffs were to receive their commission when they found a purchaser for the land. All that is stated is that they have not received the $836, and that as soon as they got it they would pay the $112.50. Without plaintiff's letter, it is a little difficult to understand what is meant by the one in evidence. However, defendants denied that they had received the $836, and they insisted upon this denial on the witness stand. Their witness testified that $500 was in the bank in escrow awaiting the result of the suit brought by the purchasers, for whom one of the plaintiffs was an attorney. Should we hold defendants estopped, it would only be to the extent of their declarations contained in the letter, to the effect that they had not received more than $336, and that when they received all they would pay the commission. In the absence of proof that the money was received, as contemplated in defendants' letter, no such an estoppel arose as would preclude the defendants.

Manifestly this letter had reference to the suit brought by Thompson and Torkelson, and a jury might have found

the language of the letter to mean that until that suit was determined defendants had not got the $836, which the original contract of purchase denominated a forfeiture as liquidated damages. At any rate the question was not for the court. The letter is not, as we have said, conclusive as a contract, and, if operative as an estoppel, it must be shown that the conditions named therein have been fulfilled. The fault in plaintiffs' logic is that they assume defendants " have got the $836," which is denied by them, and further claim that an estoppel established the contract as claimed by them against an explicit denial on the part of the defendants. The construction of the letter, which in itself is somewhat ambiguous, was for the jury, and not for the court.

For the errors pointed out, the judgment must be, and it is, *reversed.*